IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **Bradley Griffin**, | ) | Civil Action No.  2:11-3539-SB-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **The Citadel and Dennis Lane,** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action was originally filed by the Plaintiff in the South Carolina Court of Common Pleas, Charleston County. Plaintiff, a former employee of the Citadel, asserts claims against the Citadel for race and sex discrimination as well as for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., and 42 U.S.C. § 1981.  Plaintiff also asserts a state law breach of contract claim against the Citadel, and a state law claim for slander and intentional interference with a contract against the Defendant Dennis Lane.  The Defendants removed this case to federal court on December 29, 2011 on the basis of the two (2) federal claims asserted. See Court Docket No. 1.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 21, 2012.  After receiving extensions of time to respond, Plaintiff filed a memorandum in opposition to the Defendants' motion on December 30, 2012, following which the Defendants filed a reply memorandum on January 11, 2013.  The Defendants' motion is now before



1

the Court for disposition.[1]

## **Background and Evidence**[2]

Plaintiff, a white male, was initially hired by the Citadel as a Coordinating Officer in Charge (COC) in January 2009. This was a temporary position that ended around May 10, 2009. Plaintiff's Deposition, pp. 30-31. Plaintiff testified that in March 2009, the Fourth Battalion Tactical Officer, Colonel Wendell McMillan, approached him about applying for a Company Tactical Officer (CTO) position because one of his current CTO's, Lt. Colonel Ed Hall, was going to be deployed. Plaintiff's Deposition, pp. 36-37, 57-58, 60. Plaintiff thereafter applied for a CTO position, and on June 29, 2009 signed a contract to serve as a CTO working for Colonel McMillan in the Fourth Battalion. Id., p. 63. See also, Defendants Exhibit C [Contract].[3] A few days later, on July 6, 2009, the Citadel also hired retired Air Force Captain L. Alece Wood, an African American female, to work as a CTO in the Fourth Battalion. Defendants' Exhibit D (Dopf Affidavit), ¶ 3.[4]

Plaintiff testified that after Captain Wood was hired, he was told by Colonel McMillan and CTO Tom Hone[5] that Wood was being assigned to the Fourth Battalion and that he [Plaintiff]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed herein in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[3]While Plaintiff's contract did not indicate that he was being assigned to any particular battalion, Plaintiff testified that he was assigned to the Fourth Battalion.

[4]Dopf attests that, in all material respects, the employment agreements signed by Griffin and Wood were the same. Id., ¶ 4.

[5]Hone's rank is not consistently referred to in the record. See Defendant's Memo in Support
(continued...)



would be moved to another battalion. Plaintiff testified that these individuals told him that Wood was being assigned to Fourth Battalion because that was the "one place she will be able to make it", and that her being African-American was a reason that the Fourth Battalion was the only place that she would be able to make it. Plaintiff's Deposition, pp. 70-71. Plaintiff was then transferred to the Third Battalion, where he was supervised by the Defendant Lane, a Colonel. Lane Deposition, p. 18.[6]

Shortly thereafter, Colonel Lane began keeping a handwritten journal documenting Plaintiff's purportedly poor work performance. The first journal entry appears to be July 16, 2009. See Defendants' Exhibit E [Journal]. Plaintiff contends that there was nothing wrong with his job performance, and testified that Lane was actually retaliating against him for Plaintiff having reported Lane for having alcohol in his office. Plaintiff's Deposition, pp. 79-81.[7] Based on what Defendants contend were a "litany of complaints" concerning Plaintiff's job performance, Colonel Lane issue several letters of reprimand to the Plaintiff beginning on August 19, 2009. See Defendants' Exhibit M. Lane also wrote to Colonel Leo Mercado, the Commandant of Cadets, on August 24, 2009

---

[5](...continued)
of Summary Judgment, p. 14; see Plaintiff's Deposition, p. 72.

[6]Defendants dispute that Plaintiff was ever initially assigned to the Fourth Battalion, or that his assignment to the Third Battalion was a "transfer". See Dopf Affidavit, ¶ 2. However, for purposes of summary judgment, the undersigned has assumed Plaintiff's version of events to be true.

[7]Plaintiff argues in his brief that Lane was also aware that he had complained about discrimination, and that Lane's retaliation against him began around that same time, citing to page 80 of his deposition. See Plaintiff's Brief, p. 8, ¶ ¶ 21-24. However, Plaintiff does not reference having made any allegations of discrimination, or that Lane knew about and retaliated against him for having made any such allegations, on page 80 of his deposition. See Plaintiff's Deposition, p. 80; see also Discussion Section II, infra.



recommending that Plaintiff be terminated. See Defendants' Exhibit H.[8] Colonel Mercado appointed Lt. Colonel Kevin Dopf to conduct an internal inquiry into Lane's allegations, following which Dopf issued a written report on September 1, 2009 in which Dopf concluded that Plaintiff's job performance had been unsatisfactory. However, while Dopf recommended that Plaintiff be provided an overall comprehensive assessment in writing of his poor performance to date, he did not find any grounds to terminate Plaintiff's employment contract. See Defendants' Exhibit N. Colonel Mercado then issued a memorandum to Colonel Lane on September 14, 2009 relaying Dopf's findings and instructing Lane to conduct a formal and comprehensive written counseling of the Plaintiff's performance to include a detailed performance improvement plan. Lane was also to a make sure that Plaintiff understood that he was a probationary employee for a period of one year, and that any further actions that did not present the professionalism expected of a CTO may result in his termination. See Defendants' Exhibit O.

Defendants contend that Plaintiff thereafter continued to have performance problems, including missing mandatory meetings, missing appointments and inspections, and behaving in an insubordinate manner. See Defendants' Exhibit E, at Bates Nos. 47-49. On September 29, 2009, Lane sent Plaintiff a memorandum stating that Plaintiff had missed the counseling meetings Plaintiff was supposed to be attending, and asking whether Plaintiff intended to follow his order to attend these meetings. See Defendants' Exhibit K. Plaintiff testified that he thought these meetings were "harassment", but nevertheless replied to Lane's memorandum by indicating that he would follow

---

[8]Colonel Mercado is who Plaintiff reported his allegation about Lane having alcohol in his refrigerator to. Plaintiff testified that Mercado told Lane about Plaintiff's accusations. Plaintiff's Deposition, pp. 79-80. Plaintiff further testified that, in addition to the alcohol allegation, he complained to Mercado about Lane's general behavior and decision making, but that Mercado failed to ever investigate his complaints about Lane. Id., pp. 81-82.



Lane's order.  Plaintiff's Deposition, p. 109; Defendants' Exhibit K.  However, while Plaintiff testified that he did thereafter attend some of these meetings, he also conceded that he continued to miss some of them.  Id., pp. 108-112.  Lane also continued to document in his journal problems he allegedly was having with Plaintiff's performance after the September 29, 2009 memorandum and meeting.  See Defendants' Exhibit E, Bates Nos. 50-60.

On October 16, 2009, Colonel Mercardo sent a memorandum to Colonel Dennis Carpenter, Director of Human Resources, recommending that Plaintiff be terminated.  This recommendation was based on "numerous reports indicating insubordination and a lack of respect for the school, its rules and his supervisor [Colonel Lane]".  Mercado's memorandum further stated that, as a result of the earlier inquiry, Plaintiff had been counseled during September 2009, and that since that time he had been directed to meet daily with his immediate supervisor but had failed to do so.  See Defendants' Exhibit R.  Mercado testified that in making this recommendation, he was considering Plaintiff's actions and behaviors subsequent to the conclusion or completion of the initial inquiry,  not the information contained in the previous memos in Plaintiff's file about his conduct and behavior.  Mercado Deposition, p. 16.

On October 20, 2009, Colonel Carpenter wrote Plaintiff a letter in which he stated that he had received Mercado's recommendation, that he had been provided with and had reviewed numerous documents from the Commandant's Department, and that he concurred with Colonel Mercado's recommendation.  Plaintiff was advised that he was being terminated for "just cause" under paragraphs 6.1.1 and 6.1.3 of his contract, he was suspended with pay effective that day, and was told he would be terminated effective October 31, 2009.  See Defendants' Exhibit S.

On that same date (October 20, 2009), a meeting was held concerning allegations that



Captain Wood had violated the Citadel's sexual harassment policy.  See Plaintiff's Exhibit 13; see also Carpenter Deposition, p. 30.  The allegation was that Captain Wood had indicated to a cadet that she was attracted to him.  A follow-up investigatory meeting concerning this complaint was held on October 29, 2009.  Wood admitted her conduct, and a letter of reprimand was recommended that became part of Captain Wood's personnel file.  See Plaintiff's Exhibit 13, p. 14.  Carpenter also testified that although Wood's supervisor thought she was doing a "great job", that based on the fact that it was a sexual harassment case, Human Resources felt it was probably best to move Wood out of the battalion where she was.  As a result, Wood was moved over to "Jenkins Hall".  Carpenter testified that Wood "worked there for the remainder of the semester" and "by all accounts did a great job".  She was then reassigned the following semester.  Carpenter Deposition, p. 31.

Meanwhile, following Plaintiff's receipt of Carpenter's termination letter of October 20, 2009, he requested and was granted a termination hearing.  See Defendant's Exhibit T.  Plaintiff's termination hearing was held on October 29 and 30, 2009, and was presided over by Colonel Joseph Trez.  See Defendants' Exhibit U.  At the conclusion of the termination hearing, Colonel Trez confirmed Plaintiff's termination.  Id.  The Citadel contends that Plaintiff thereafter had ten days to appeal this decision to the President of the Citadel, but that Plaintiff failed to timely do so.  See Defendants' Exhibits V, Y; see also Carpenter Deposition, pp. 14, 35.  Plaintiff contends that there was no deadline to appeal his termination decision.  See Defendants' Exhibit Z.

On or about August 16, 2010, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that he had been discriminated against on the basis of his race and sex, and that he had also been retaliated against for engaging in protected conduct.  Plaintiff alleged that he was discriminated against on the basis of his race and sex when

6



he was transferred from Fourth Battalion to Third Battalion so that an African American female could be the CTO in the Fourth Battalion. Plaintiff further charged that he informed his supervisor in the presence of others that this action was discriminatory. Plaintiff alleged that he was thereafter terminated for pretextual reasons, while an African American female was later accused of and admitted to sexually harassing a cadet, but kept her position and was not terminated. See Plaintiff's Exhibit 1 (Charge of Discrimination). After receiving a Right to Sue letter, Plaintiff filed this lawsuit in the United States District Court.

### Discussion

The Defendants have moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

### I.

### (Disparate Treatment Claim)

In his First Cause of Action, Plaintiff asserts a disparate treatment race and sex



discrimination claim in violation of Title VII and 42 U.S.C. § 1981,[9] based on his assertion that he was subjected to both race and sex discrimination when he was transferred from the Fourth Battalion to the Third Battalion, and when he was terminated while a female African-American who engaged in misconduct was not terminated.

Plaintiff's claim requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[10]  Plaintiff has not offered any direct evidence of race or sex discrimination,[11] and the Defendant Citadel[12] argues that Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue of fact as to whether any of the employment actions at issue occurred because of his race and/or sex under the <u>McDonnell Douglas</u> proof scheme to survive summary judgment.[13]

---

[9]To pursue a claim under § 1981, Plaintiff must prove that the Defendant "intended to discriminate [against the Plaintiff] on the basis of [his] race and/or sex, and that the discrimination interfered with a contractual interest." <u>Denny v. Elizabeth Arden Salons, Inc.</u>, 456 F.3d 427, 434 (4th Cir. 2006).

[10]Although <u>McDonnell Douglas</u> is a Title VII case, the standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute.  <u>See</u> <u>Ross v. Kansas City Power & Light Co.</u>, 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim."]; <u>Long v. First Union Corp. of Virginia</u>, 894 F.Supp. 933, 945 (E.D.Va. 1995); <u>Kim v. Nash Finch Co.</u>, 123 F.3d 1046, 1063 (8th Cir. 1997).

[11]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 56 F.3d 542, 548-549 (4th Cir. 1995), <u>rev'd on other grounds</u>, 517 U.S. 308 (1996);  <u>Black's Law Dictionary</u>, 460 (6th Ed. 1990) (citing <u>State v. McClure</u>, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974)); <u>see</u> <u>Williams v. General Motors Corp</u>, 656 F.2d 120, 130 (5th Cir. 1981), <u>cert.</u> <u>denied</u>, 455 U.S. 943 (1982).

[12]As previously noted, Plaintiff's Title VII and § 1981 disparate treatment claim is asserted only against the Defendant Citadel.

[13]Plaintiff's claim could also be considered under the so-called "mixed-motive" analysis, even
(continued...)

8



The undersigned is constrained to agree.

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in <u>McDonnell Douglas</u>. <u>First</u>, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against him. <u>Second</u>, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. <u>Third</u>, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the  Defendant were really based on Plaintiff's race and/or sex. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-256 (1981); <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see also</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993).

---

[13](...continued) though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. <u>See</u> <u>Hill v. Lockheed Martin</u>, 354 F.3d 277, 284-285 (4th Cir. 2004); <u>Mereish v. Walker</u>, 359 F.3d 330, 339-340 (4th Cir. 2004); <u>cf</u>. <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. Therefore, the undersigned has only evaluated Plaintiff's claim using the <u>McDonnell Douglas</u> analysis. <u>See</u> <u>Hashem-Younes v. Danou Enters., Inc.</u>, 311 Fed.Appx. 777, 779 (6th Cir. 2009)[Affirming district court's application of <u>McDonnell Douglas/Burdine</u> framework where the Plaintiff failed to raise a mixed-motive claim in her complaint or in her response to the Defendant's motion for summary judgment motion, and the record was "utterly silent as to mixed motives"]; <u>Hopes v. Roche</u>, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing <u>Nagy v. Baltimore Life Ins. Co.</u>, 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).



In order to meet the first prong of the <u>McDonnell Douglas</u> formula and establish a prima facie case of race and/or sex discrimination, Plaintiff must show (1) that he is a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he was subjected to an adverse employment action; and (4) that other employees who were not members of his protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination. <u>See generally</u>, <u>Austen v. HCA Health Services of Virginia, Inc.</u>, No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); <u>Hughes v. Bedsole</u>, 48 F.3d 1376, 1383 (4th Cir. 1995), <u>cert. denied</u>, 516 U.S. 870 (1995). <u>See also</u> <u>Gilbert v. Penn-Wheeling Closure Corp.</u>, 917 F.Supp. 1119, 1125 (N.D.W.Va. 1996). It is undisputed that Plaintiff is a member of a protected class;[14] however, Defendant argues that the evidence does not show that Plaintiff was satisfactorily performing his job, or that he was subjected to any adverse employment action under circumstances giving rise to an inference of unlawful discrimination.

**Transfer**. The Defendant has put forth no evidence to show that at the time Plaintiff was assigned to the Third Battalion he was not adequately performing his job. Therefore, with respect to Plaintiff's claim concerning his alleged transfer, that prong of the prima facie case is not

---

[14]When a Plaintiff is a member of a majority class, some courts have held that they must also set out background circumstances to show that the Defendant discriminates against the majority. <u>Farr v. St. Francis Hosp. and Health Centers</u>, 570 F.3d 829, 833 (7th Cir. 2009); <u>Wilson v. Ohio</u>, 178 Fed.Appx. 457, 464-465 (6th Cir. 2006)[In adapting the <u>McDonnell Douglas</u> test to cases of reverse discrimination, the Plaintiff must demonstrate "background circumstances [to] support the suspicion that the Defendant is the unusual employer who discriminates against the majority."] (Quoting <u>Murray v. Thistledown Racing Club, Inc.</u>, 770 F.2d 63, 67 (6th Cir. 1985)). However, whether this heightened burden standard is applicable in the Fourth Circuit is unclear. <u>See</u> <u>Weeks v. Union Camp Corp.</u>, Nos. 98-2814 and 98-2815, 2000 WL 27771, at n. 13 (4th Cir. 2000); <u>McNaught v. Virginia Community College System</u>, _____ F.Supp.2d _____, 2013 WL 1165148, at * 13 (Mar. 20, 2013)[Noting that "[t]he Fourth Circuit has not taken a position officially on this issue and, in fact, repeatedly has refused to do so."]. In any event, for the reasons set forth and discussed hereinabove, Plaintiff's claim fails even with out being considered under this heightened standard.



at issue.  Considered in the light most favorable to the Plaintiff, the evidence is also sufficient to create an inference that the reason Plaintiff was assigned to the Third Battalion and Wood was assigned to the Fourth Battalion was because of race and sex.  Plaintiff's Deposition, pp. 70-72.  However, even assuming that this evidence (considered in the light most favorable to the Plaintiff) gives rise to an inference of unlawful discrimination, Plaintiff's "transfer" claim still fails for the simple reason that there is no evidence to show that Plaintiff was subjected to an adverse employment action as a result of this transfer.  James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375-376 (4th Cir. 2004)["The existence of some adverse employment action is required"], cert. denied, 543 U.S. 959 (2004).

An "adverse employment action" is something that has a significant adverse effect on one's employment.  Cf. Lybarger v. Gates, No. 10-373, 2012 WL 1095915 at * 11 (N.D.Ohio Mar. 30, 2012)["Adverse employment actions are typically marked by a 'significant change in employment status,' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"] (internal citations omitted).  Here, however, Plaintiff concedes that his transfer and assignment to the Third Battalion from the Fourth Battalion did not affect his pay, his benefits, his duties, his job title, level of responsibility, or any other facet of his employment as a CTO.  See Plaintiff's Deposition, pp. 97-98, 182-183.  Plaintiff's assignment to the Third Battalion (instead of the Fourth Battalion) was not a demotion for him, nor was Wood's assignment to the Fourth Battalion (instead of the Third Battalion) any type of promotion or assignment for her to a better job.  Plaintiff's Deposition, pp. 97-98, ¶¶ 182-183; cf. Dorf Affidavit, ¶ 4.  Hence, the mere fact that Plaintiff was transferred from the Fourth Battalion to the Third Battalion was not under the facts of this case an "adverse employment



action" for purposes of supporting a disparate treatment claim. James, 368 F.3d at 376 [Absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position] (citations omitted). While Plaintiff complains that, after this transfer, he was supervised by Lane instead of McMillan, that is not an "adverse employment action." The fact that Plaintiff may have liked or preferred his previous supervisor, while following his transfer he did not like and/or get along with his new supervisor (Lane), is not evidence of an adverse employment action for purposes of establishing a prima facie case. See Geisler v. Folsom, 735 F.2d 991, 994-996 (6th Cir. 1984) [no "adverse employment action" where evidence failed to establish any more than bad relations between plaintiff and her supervisor].

Therefore, Plaintiff having failed to present any evidence to show that he suffered an adverse employment action as that term is defined in the applicable caselaw when he was assigned to the Third Battalion, he has failed to establish his prima facie case with respect to that claim, and his assignment/reassignment/"transfer" claim should be dismissed. Cook v. CSK Transp. Corp., 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of [ ] discrimination...."]; see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) [there must be evidence on which a jury could reasonably find for the Plaintiff].

**Termination**. With respect to Plaintiff's termination claim, termination from employment is of course an adverse employment action. Ainsworth v. Loudon County School Bd., 851 F.Supp.2d 963, 976 (E.D.Va. 2012)["Adverse employment actions are those that negatively impact the terms, conditions, or benefits of employment, . . . ., termination being the quintessential



12

example . . . ."].  With respect to whether Plaintiff was satisfactorily performing his job, the Defendant has submitted substantial evidence to show that Plaintiff was not performing his job at a level satisfactory to his supervisors. <u>See Defendant's Exhibits E, H, K, M, N, O, R and S</u>; <u>see also</u> <u>Mercado Deposition</u>, p. 16.  Although Plaintiff does not dispute many of the factual assertions made by the Defendant with respect to his employment, he strongly objects to Defendant's characterizations of how he was doing his job,  offering explanations for why he acted as he did while also contending that Colonel Lane was retaliating against him. <u>Plaintiff's Deposition</u>, pp. 109, 112, 128, 140, 152; <u>Lane Deposition</u>, pp. 32, 34-35, 43.  However, the Court does not need to make a finding at this time with respect to Plaintiff's job performance, as it is clear that his disparate treatment termination claim is subject to dismissal for failure of the Plaintiff to show that other employees outside of his protected class received more favorable treatment, or that there is any other basis on which to find an inference of discrimination.

First, that Plaintiff's termination was allegedly the result of unlawful retaliation is a totally separate claim, which is discussed in Section II of this opinion, <u>infra</u>.  <u>Murphy v. Suffolk</u> <u>County Community College</u>, No 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011)[Noting that disparate treatment claims and retaliation claims are distinct claims that should be alleged in separate counts.].  With respect to solely his disparate treatment claim, however, Plaintiff bases this claim on the fact that he was terminated for his alleged transgressions while Captain Wood (an African-American female) was not terminated for her alleged misconduct.  However, the mere fact that Plaintiff was terminated while Wood was not is not in an of itself evidence of unlawful discrimination, as the misconduct they were accused of was not of the same nature, nor did it cover an equivalent time period.  <u>Smith v. Sunbelt Rentals, Inc</u>., 356 Fed.Appx. 272 at ** 6-7 (11th Cir.



Dec. 10, 2009)[To survive summary judgment, Plaintiff must show that he and the alleged comparable employee are "similarly situated in all relevant respects"]; Robinson v. United Parcel Services, Inc., No. 06-2601, 2007 WL 3484743 at * 4 (N.D.Ga. Nov. 14, 2007)[Proper comparator for purposes of a wrongful termination claim is one who is similarly situated in all relevant respects]; Shivers v. S.C. Dept. of Corrections, No. 09-3357, 2011 WL 4549261, * 7 (D.S.C. Sept. 30, 2011)[Noting that to be similarly situated employees had to have been "engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"] (internal citations omitted).

      Here, the evidence shows that Wood was accused by a cadet of having made an inappropriate sexual comment or comments, that upon investigation Wood admitted her conduct and apologized, and that because of this incident she received a letter of reprimand in her file and was also transferred. Plaintiff's Exhibit 13; Carpenter Deposition, pp. 30-31. Significantly, Plaintiff has presented no evidence to show that Captain Wood was ever involved in any other misconduct or was cited for any other employment deficiencies. See Plaintiff's Deposition, pp. 183-184. To the contrary, the evidence before the Court is that, otherwise, Wood was an exemplary employee who did an excellent job. See Defendant's Exhibits W and X. Conversely, Plaintiff was considered by his supervisor to be a poor employee, with the record containing numerous examples of alleged misconduct and/or deficiencies committed by the Plaintiff. See Defendant's Exhibits E, H, K, M, N, O, R, S and U. While Plaintiff disputes the nature or severity of his alleged transgressions, the evidence shows that in any event he was not terminated based on initial reports of his alleged deficiencies and/or misconduct; rather, the record shows that following an investigation of his performance, he was only ordered to be counseled. See Defendant's Exhibits N and O. It was only

14



after Lane *continued* to complain of and document what he considered to be continued performance problems by the Plaintiff that a recommendation of termination was accepted following a review of Plaintiff's performance by Human Resources and then confirmed after a full termination hearing. See Defendant's Exhibits E, K, R, S, and U.

This evidence does not give rise to a genuine issue of fact as to whether a similarly situated person outside of Plaintiff's class received more favorable treatment, as the evidence clearly shows that the two situations at issue are not remotely similar. Cf. Mulvey v. BellSouth Telecommunications, Inc., No. 08-3547, 2010 WL 3782433, at * 10 (D.S.C. Sept. 20, 2010)[Noting that "employees with different disciplinary records will often receive different punishments for . . . misconduct based upon their past records"]; Mahomes v. Potter, 590 F.Supp.2d 775, 784 (D.S.C. 2008) [Courts will generally conclude that employees are not appropriate comparators where the disciplinary history of the two employees is not similar]. Other than his own subjective speculation and conjecture, Plaintiff has failed to present any evidence to show that other employees who were not members of his protected class were treated more favorably than he was under similar circumstances. Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination].

Nor has Plaintiff presented any *other* evidence with respect to his termination sufficient to give rise to an inference of unlawful discrimination. Like the Plaintiff, Lane is also white; Court Docket No. 41-17, pp. 12; and both Lane and Mercado are males.[15] Cf. Dungee v. Northeast Foods, Inc., 940 F.Supp. 682, 688 n. 3 (D.N.J. 1996) [that decisionmaker is member of

---

[15]While the record refers to Mercado as a male, his race is not apparent from the record.



plaintiff's own protected class "weakens any possible inference of discrimination"]; <u>Elrod v. Sears,</u>
<u>Roebuck and Co.</u>, 939 F.2d 1466, 1471 (11th Cir. 1991) ["[I]t is difficult for a plaintiff to establish
discrimination when the allegedly discriminatory decision-makers are within the same protected class
as the plaintiff."]; <u>United States v. Crosby</u>, 59 F.3d 1133, 1135 n. 4 (11th Cir. 1995) ["While we
acknowledge that a...violation may occur even where a supervisor or decision-maker is of the same
race as the alleged victim....we note that the district court found that there was no evidence that [the
decision-maker] held members of his own race to a higher standard of conduct than members of
another race."].  Plaintiff has provided no evidence to demonstrate, or from which this Court could
infer, a gender or racial animus on the part of either Mercado or Lane.  <u>Gairola v. Virginia Dep't of</u>
<u>General Services</u>, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the
only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [his]
disfavorable treatment was the result of discrimination...."]; <u>see</u> <u>also</u>, discussion, Section II, <u>infra</u>.
This cause of action should therefore be dismissed.  <u>Rucker v. Greenville Co. Sheriff Dep't.</u>, No. 10-
1533, 2012 WL 951789, * 2 (D.S.C. March 20, 2012)[Conclusory allegations or denials, without
more, are insufficient to preclude the granting of a summary judgment motion].

## II.

### (Retaliation Claim)

In his Second Cause of Action (also asserted only against the Defendant Citadel),
Plaintiff alleges that he was "retaliated against for reporting [Lane] to the Commandant for having
alcohol in his office refrigerator and race discrimination . . . .".  <u>Amended Complaint</u>, ¶ 92.  Plaintiff
further alleges that the Defendant then terminated him on October 8, 2009 (sic) "in retaliation for his
complaints regarding race discrimination regarding the treatment that he suffered as a result of his

16



complaints regarding, race, age, sex, disability, failure to accommodate and retaliation." Id., ¶ 94.[16]

Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII[17] are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer

---

[16]It is unclear why Plaintiff references "age" and "disability" in this paragraph. Plaintiff has set forth no factual allegations to show, nor has he otherwise claimed, any cause of action for unlawful retaliation based on his age (which would be a claim under the Age Discrimination in Employment Act) or a disability or "failure to accommodate" (which would be a claim under the Americans with Disabilities Act).

[17]See also, n. 10, supra.



has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id.

Here, as with Plaintiff's disparate treatment claim, Plaintiff has again failed to submit evidence sufficient to give rise to a genuine issue of fact with respect to his prima facie case. Considered in the light most favorable to the Plaintiff, the evidence shows that the Defendant took an adverse action against Plaintiff by disciplining him and terminating his employment. Therefore, that prong of Plaintiff's prima facie case has been established. With respect to whether Plaintiff engaged in protected activity, while Plaintiff's allegation that he complained about Lane having alcohol on campus is assumed to be true for purposes of summary judgment (and, indeed, this claim does not appear to be disputed by the Defendant), that is not activity protected by Title VII. Rodas v. Town of Farmington, ___ F.Supp.2d ___, 2013 WL 178152 at * 5 (W.D.N.Y. Jan. 16, 2013)["'Protected activity' includes opposing employment practices that are prohibited under Title VII (such as discrimination based on race, color, religion, sex, or national origin), or making a charge of discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII."]; Sung Kun Kim v. Panetta, No. 11-1370, 2012 WL 3600288 at * 17 (E.D.Va. Aug. 21, 2012) ["Protected activity does not include generalized employment-related complaints unrelated to Title VII prohibited discrimination"]; Sara Kaye Ruffner v. MD OMG EMP LLC, No. 11-1880, 2012 WL 3542019 at * 3 (M.D. Aug. 13, 2012)["Protected activity does not include opposition to all 'unlawful practices' or 'practices the employee simply thinks are somehow unfair'; the employee must have 'actually opposed employment practices made unlawful by the [anti-discrimination statute"]. Indeed, Plaintiff does not himself argue that his reporting Lane for having alcohol on campus was "protected



activity" for purposes of a Title VII claim.  <u>See</u> <u>Plaintiff's Brief</u>, pp. 41-42.  Rather, Plaintiff argues that he engaged in protected activity when he was "transferred from one battalion to another [he] specifically stated that the actions were because of race and sex", citing to page 70 of his deposition. <u>See</u> <u>Plaintiff's Brief</u>, p. 40 and n. 153.  A review of page 70 of Plaintiff's deposition reveals that Plaintiff testified he was told by Colonel McMillan and CTO Hone that Wood was being assigned to the Fourth Battalion because she would "not make it" in any other battalion, and that he [Plaintiff] "was going to have to go because of that."  Plaintiff further testified that McMillan and Hone told him that Wood being an African American was the reason that the Fourth Battalion was the only place that she would be able to make it, apparently due to the "temperament of the leadership in that battalion".  <u>Plaintiff's Deposition</u>, pp. 70-71.  Plaintiff testified he then told McMillan and Hone that he "was being discriminated against".  <u>Id</u>., p. 72.

Assuming this statement by Plaintiff in his deposition to be true for purposes of summary judgment, the undersigned finds that Plaintiff making such a statement to McMillan and Hone would constitute protected activity under Title VII.  <u>Bowman v. Holopack Intern. Corp.</u>, No. 06-1648, 2007 WL 4481130 at * 14 (D.S.C. Dec. 19, 2007)["[T]he opposition clause encompasses informal protests, such as voicing complaints to superiors or protests using an employer's grievance procedures."].  However, that is the only piece of evidence that has been presented to the Court showing Plaintiff engaging in any protected activity.  In fact, Plaintiff concedes that after he made this one-time statement to McMillan and Hone, he "made no further advancements on pursuing discrimination".  <u>Id</u>., p. 72.  When Plaintiff was asked at his deposition what actions he took, other than stating to Colonel McMillan and CTO Hone on that one occasion that he believed he was being discriminated against on the basis of his sex and race, Plaintiff testified as follows:



Question:        . . . Did you put that in writing to anyone?

Answer:          I took it no further.

Question:        What do you mean you took it no further?

Answer:          Meaning I didn't go, you know, to the EEO

Question:        The EEO?

Answer:          The Equal employment opportunity officer.

Question:        Right.  Did you ever go to anybody at the Citadel and put it in writing?

Answer:          Well, no.  Because of that point, after I cooled down a little, it was like, hey, this is a great opportunity to pick up here and go over there.

Plaintiff's Deposition, p. 73.

Plaintiff was later asked again whether there was "something else [he] did" other than speaking to Major McMillan, to include even discussing it again with Major McMillan subsequently, to which Plaintiff answered "No".  Id., p. 77.  Hence, while the evidence reflects that Plaintiff engaged in protected activity, there is no evidence that anyone other than McMillan and Hone were aware that Plaintiff had done so.  Plaintiff himself testified that he went no further, and there is no evidence to show that either McMillan or Hone discussed the matter further with either the Plaintiff or anyone else.

        The Court must therefore turn to the last prong of the retaliation prima facie case: whether there is evidence that a causal connection exists between Plaintiff having engaged in protected conduct and the adverse acts taken against him.  Here, Plaintiff makes clear in his deposition that it was Lane and Mercado who subjected him to the allegedly retaliatory conduct, which occurred after he reported to Mercado that Lane had alcohol on campus.  There is no evidence that this allegedly retaliatory conduct was related in any way to Plaintiff's earlier statement to



McMillian and Hone.  Plaintiff testified that after he made the allegation about Lane having alcohol to Mercado, Mercado told Lane about Plaintiff's accusations, "[a]nd so then what you see after that day is the retaliations in the form of write-ups, et cetera.  And that is my point".  Plaintiff's Deposition, p. 80.  The following colloquy then took place:

Question:    Well, are you saying . . . that you were terminated because you reported that defendant Lane had alcohol in his officer refrigerator?  In other words did The Citadel fire you because you reported that Dennis Lane had alcohol in is refrigerator?

Answer:    No.

Question:    Okay.  So did the reporting of alcohol in Dennis Lane's refrigerator have anything to do with your firing?

Answer:    It was the first domino to fall that hit all the other dominos.

Question:    It seems like you are saying or suggesting that Dennis Lane maybe had some kind of vendetta against you because you reported that he had alcohol in his refrigerator.

Answer:    Well, I think if you look at [Paragraph 40 of the Amended Complaint],[18] it says, you know, I make the statement that the Defendant retaliated against me.

Question:    When you say the Defendant are you referring to The Citadel or Dennis Lane?

Answer:    I am referring not only to [Lane] but I am also referring to [Mercado], who represents the institution.

Question:    And how did he retaliate against you?

Answer:    Because, first of all, at that time he should have investigated my allegations.  My boss, at that point, should not have been informed who made the allegation against him, but they should have investigated it.

Question:    The allegation about alcohol in the refrigerator.

Answer:    Yes.

---

[18]Paragraph 40 of the Amended Complaint reads as follows: "After reporting that [Lane] had alcohol in his office refrigerator to [Mercado] at the suggestion of the Citadel Chaplin, [Lane] retaliated against the Plaintiff".



<u>Id</u>., pp. 80-81.

Plaintiff returned to this subject later on in his deposition, and testified as follows:

Question:    You made a claim that The Citadel has retaliated against you.

Answer:    The retaliation came from Colonel Lane.

* * * *

Question:    What was the retaliation?

Answer:    I went and made a complaint to [Mercado] He in turn did not, as he said, I have to figure out how this will work. I will get back to you. He never got back to me. Even in his own statement at the hearing he says that. And after I went there, then we start getting all these write-ups and, you know, the investigation, and all this stuff starts to happen after I go to see [Mercado]. This was not going on before I went to [Mercado]. Once I went to [Mercado] everything intensified with the retaliation.

Question:    When did you first go to Colonel Mercado?

Answer:    [August 2009.]

* * * *

Question:    Okay. Well, just help me understand. Why was he retaliating against you? What did he do that made you feel like he was retaliating against you?

Answer:    When I went to [Mercado], [Mercado] informed - -

Question:    Went to [Mercado] about what?

Answer:    My complaint.

Question:    Complaint about what? The drinking or what?

Answer:    Yes. I mean when I went to him about the alcohol in his refrigerator, and the other things that had been going on - -

Question:    Please be specific. What other things are you talking about? Be specific.

Answer:    [Plaintiff discusses incidents where he believed Lane mistreated him].

Question:    Why do you think [Lane] retaliated against you?

22



Answer:        Well, I think, again, when I made the accusation he was, you know, in so many words, an alcoholic, to his boss, and his boss turns around and tells him that, I think that accusation - - I mean he was and he did.

Question:      Okay. Now I understand that. So I want to make sure I understand you. In terms of Colonel Lane retaliating against you, it was because of a charge about alcoholism.

Answer:        Exactly. I am sorry, prior to Colonel Lane, I have never been written, never had any incident as the coordinating officer in charge. No issues whatsoever from Colonel McMillan for the things that I was doing and working on over there. About anybody but - - then when I go to work for Colonel Lane.

Question:      He retaliated against you by starting to write you up as being insubordinate.

Answer:        Yes.

Question:      Which ultimately led to your termination.

Answer:        Exactly.

Plaintiff's Deposition, pp. 194-201.

There is nothing in this testimony or in any of the other evidence before this Court which creates a genuine issue of fact that Lane and Mercado's alleged retaliatory actions taken against the Plaintiff had anything whatsoever to do with Plaintiff telling McMillan and Hone that his transfer to Third Battalion was discriminatory. Plaintiff's comment to McMillan and Hone was the protected activity; see, discussion, supra; and the lack of any evidence connecting this protected activity to Lane and Mercado's conduct is fatal to Plaintiff's retaliation claim. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"]; Cecilino v. Allstate Ins. Co., 908 F.Supp. 519, 532 (N.D.Ill. 1995) [a simple showing that an adverse action occurred after a complaint of discrimination 'is not even enough to make out a prima facie case of retaliation, let alone to survive a motion for



summary judgment.'].

Plaintiff has provided no evidence to show that any of the disciplinary actions taken against him, up to and including his discharge, were related to his complaints of discrimination. As cited hereinabove, Plaintiff testified that McMillan never took any retaliatory actions against him, and he has provided no evidence whatsoever to show that Lane and Mercado even knew that he had allegedly complained that his transfer to Third Battalion was discriminatory. Cf Summers v. City of Dotham, Ala., 444 Fed. Appx. 346, 352 (11th Cir. 2011)["[I]n context of Title VII retaliation claims 'neither a court or a jury may impute knowledge to a decision maker who has sworn he had no actual knowledge'"] (quoting Brochu v. City of Riviera Beach, 304 F.3d 1144, 1156 (11th Cir. 2002)). Further, while the evidence shows that McMillan and Hone knew about Plaintiff's complaint, Plaintiff has not alleged that either of these two individuals had any animus against him or played any role in his subsequent employment write-ups or termination, nor were either of these two individuals the relevant decision maker in this case.

A fair reading of the evidence presented to this Court is that Plaintiff and Lane did not like each other, and there is no question but that Lane went to considerable lengths to document what he believed were deficiencies in Plaintiff's employment, fairly or unfairly. Plaintiff contends that Lane was out to get him, and while Plaintiff obviously believes he was dealt with unfairly, and indeed the undersigned makes no finding as to whether the discipline meted out to Plaintiff was appropriate, he has simply provided no evidence to support his general and conclusory allegations that the *reason* he was subjected to the adverse employment actions set forth in the Complaint and the evidence was because he engaged in activity protected by Title VII. Sullivan, 197 F.3d at 815 ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima



facie case for relief....]; <u>Rucker</u>, 10-1533, 2012 WL 951789 *2 [Conclusory allegation or denials, without more, are insufficient to preclude the granting of a summary judgment motion]; <u>Palermo v. Clinton</u>, No. 11-1958, 2012 WL 169125 at * 2 (7th Cir. Jan. 20, 2012)[Suspicious timing alone generally not enough to create a triable issue retaliation case].

        The mere fact that Plaintiff engaged in protected activity does not immunize him from actions by his employer which may otherwise be justified by his work record or performance; <u>Ross</u>, 759 F.2d at 366 ["Title VII serves the laudable goal of protecting employee access to agencies and courts.  It does not shield employees from normal sanctions for misconduct."]; <u>Bodoy v. North Arundel Hospital</u>, 945 F.Supp. 890, 898 (D.Md. 1996); and while Plaintiff contests that his job performance warranted the actions taken, since he has offered no evidence (other than his own subjective belief and speculation) to show that the actions he complains of were the result of unlawful retaliation, his retaliation claim should be dismissed.  <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985)[Plaintiff may not "create a genuine issue of fact through mere speculation or the building of one inference upon another"]; <u>Gairola</u>, 753 F.2d at 1288, n. 4 [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [his] disfavorable treatment was the result of discrimination...."]; <u>see also</u> <u>Kariotis v. Navistar Intern. Transp. Corp.</u>, 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination.  Thus when an employee is discharged because of  an employer's honest mistake, federal anti-discrimination laws offer no protection."]; <u>cf</u>. <u>Rudolph v. Hechinger</u>, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing <u>Turner v. Texas</u>



Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977); Colbert v. Tapella, 677 F.Supp. 2d 289, 295

(D.D.C. 2010)(quoting Hairsine v. James, 517 F.Supp.2d 301, 308-309 (D.D.C. 2007)["[T]he scope

of review in employment discrimination cases is more narrow than [Plaintiff] wishes because federal

courts are not review boards for local employment decisions . . . . A personnel decision can be silly,

it can be unfair, and it can be short-sighted without being illegal; Title VII protects discriminatory

decisions, not wrong ones."]).

## III.

### (Remaining State Law Claims)

In addition to the federal disparate treatment and retaliation claims asserted in the

Amended Complaint, Plaintiff also asserts a breach of contract claim against the Citadel (Third

Cause of Action) and a claim for slander and intentional interference with a contract individually

against the Defendant Dennis Lane (Fourth Cause of Action). The Defendants have addressed these

state law claims in their brief and urge this Court to grant summary judgment on those claims.

However, if the Court adopts the recommendation set forth herein with regard to Plaintiff's federal

claims, his pendant state law claims will be the only claims remaining in this lawsuit, and when

federal claims presented in a case originally filed in state court are dismissed, any remaining state

law claims are ordinarily remanded back to state court for resolution under the general doctrine

developed in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See In Re Conklin, 946 F.2d 306,

324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills

v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Mellon v. Cohill, 484 U.S. 343 (1988);

Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996).

This doctrine recognizes the state court's role in determining whether summary



judgment on state law claims is warranted.  <u>Gibbs</u>, 383 U.S. at 726 ["Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"].  Remand of these remaining state law causes of action will allow the more appropriate court to rule on these exclusively state law issues, and since these claims have already been briefed, the parties may seek a fast track for resolution of these claims at the state level.  <u>See</u> Rule 40(c) S.C.R.Civ.P.  <u>Carnegie-Mellon</u>, 484 U.S. at 350, n. 7 ["[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state law claims."].  Even more importantly, if summary judgment were to be denied, it would be much more appropriate for these state law claims to be considered and tried by the state courts.

Therefore, if the Court adopts the recommendation herein for dismissal of Plaintiff's federal claims, Plaintiff's two (2) remaining state law causes of action should be remanded back to state court for disposition.  <u>See</u> <u>Clark v. Brown</u>, 861 F.2d 66, 68 (4th Cir. 1988)[Directing dismissal of state law claims on remand following dismissal of Plaintiff's federal § 1983 claim]; <u>Mills</u>, 709 F.Supp. at 675-676 [Noting that federal courts should generally decline to exercise pendant jurisdiction over remaining state law claims after dismissal of federal claims in a lawsuit].

<u>**Conclusion**</u>

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted** with respect to Plaintiff's disparate treatment discrimination (First Cause of Action) and retaliation (Second Cause of Action) claims, and that those claims be **dismissed**.  This case should then be **remanded** back to state court for disposition of Plaintiff's two remaining state



law causes of action.

        The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

May 22, 2013
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

