IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Bradley Griffin,<br><br>   Plaintiff,<br><br>v.<br><br>The Citadel and Dennis Lane,<br><br>   Defendants. | Civil Action No. 2:11-cv-3539-SB<br><br>**ORDER** |

In this action, Plaintiff Bradley Griffin, who is a former employee of the Citadel, asserts claims against the Citadel for race and gender discrimination and for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–e17 and 42 U.S.C. § 1981. The Plaintiff also alleges a claim against the Citadel for breach of contract as well as claims against Defendant Dennis Lane for slander and intentional interference with a contract. On December 29, 2011, the Defendants removed the case to this Court based on the Plaintiff's federal claims. The Defendants filed a motion for summary judgment, to which the Plaintiff responded, and the matter was referred to United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g), D.S.C. On May 22, 2013, the Magistrate Judge issued a report and recommendation ("R&R"), outlining the issues and recommending that the Court grant the Defendants' motion for summary judgment as to the Plaintiff's federal claims and remand the Plaintiff's remaining state claims to the Charleston County Court of Common Pleas. The parties filed objections to the R&R, and the matter is ripe for review.

## BACKGROUND



The Citadel originally hired the Plaintiff, a white male, in January of 2009. The

Plaintiff held a temporary position as Coordinating Officer in Charge ("COC") through May 10, 2009. The Plaintiff testified that in March of 2009, the Fourth Battalion Tactical Officer ("BTO"), Colonel Wendell McMillan, asked him to apply for a Company Tactical Officer ("CTO") position in his battalion. The Plaintiff testified that he was supposed to replace Lt. Colonel Ed Hall–a CTO under Colonel McMillan–who was scheduled for deployment. After the Plaintiff applied for a CTO position, he signed an employment contract on June 29, 2009.[1] Although the Plaintiff claims he was temporarily assigned to the Fourth Battalion, the Plaintiff's contract did not assign him to any particular battalion. The contract provides:

> Commandant's Representative shall assist in the supervision and instruction of the Corps of Cadets, and perform such other duties in the Commandant's program area as may be assigned. Institution reserves the right to reassign Commandant's Representative to duties other than as Instructor of the Corps of Cadets, subject to the other terms and conditions herein, while retaining the salaries and benefits stated herein.

(Entry 34-2 ¶ 1.3).

On July 6, 2009, the Citadel also hired retired Air Force Captain L. Alece Wood, an African-American female, to work as a CTO. The Plaintiff testified that after Wood was hired, Colonel McMillan and CTO Tom Hone told him that Wood was being assigned to the Fourth Battalion and that the Plaintiff was being assigned to another battalion. The Plaintiff testified that he was told that Wood was being assigned to the Fourth Battalion because it was "the one place she'll be able to make it." (Entry 34-2 at 14.) The Plaintiff was

---

[1] After his initial temporary position as COC ended in May of 2009, the Plaintiff continued to perform duties in the Fourth Battalion, without pay, until he was hired in June of 2009 as a CTO. The Plaintiff objects that the Magistrate Judge failed to consider this in his analysis. The Court has considered this information and finds that it does not alter the analysis. The Plaintiff also objects more broadly that the Magistrate Judge failed to consider the evidence in the light most favorable to him. The Court has undertaken an independent review of the record and finds this objection without merit.

transferred to the Third Battalion and placed under the supervision of Colonel Lane.

Colonel Lane began to document the Plaintiff's allegedly unsatisfactory work performance in a handwritten journal beginning on July 16, 2009. The Plaintiff contends that he was considered an exemplary employee and that Colonel Lane's criticism of his work was an act of retaliation because the Plaintiff had reported Colonel Lane for keeping alcohol in his office. (Entry 1-1 ¶40.) Based on what the Defendants contend were a "litany of complaints," Colonel Lane began to issue letters of reprimand starting on August 19, 2009. On August 24, 2009, Colonel Lane wrote a letter to the Commandant of Cadets, Colonel Leo Mercado, recommending that the Plaintiff "be terminated at once." (Entry 34-9 at 2.) In response, Colonel Mercado appointed Lt. Colonel Kevin Dopf to investigate Lane's allegations. On September 1, 2009, Lt. Colonel Dopf submitted a report to Colonel Mercado, finding that the Plaintiff's "job performance to date has been unsatisfactory as a Tactical Officer," but recommending that the Plaintiff be given an overall comprehensive assessment of his poor performance and be assigned a mentor, and not recommending that the Plaintiff be terminated. (Id. at 2-3.) On September 14, 2009, Colonel Mercado issued a memorandum to Colonel Lane, relaying Lt. Colonel Dopf's findings and instructing Colonel Lane to conduct a formal and comprehensive written counseling of the Plaintiff's performance and to make sure the Plaintiff understood that he was a probationary employee for one year. (Entry 34-16 at 3.)

According to the Defendants, the Plaintiff continued to have work performance problems, including missing mandatory meetings, missing appointments and inspections, and behaving in an insubordinate manner. On September 29, 2009, Colonel Lane sent the Plaintiff a memorandum noting that he had disobeyed orders to attend daily counseling



meetings. The Plaintiff testified that he thought these meetings amounted to "harassment," but he responded to Colonel Lane's memorandum by indicating that he would attend future counseling sessions. (Entry 34-12 at 2.) During his deposition, the Plaintiff admitted that his attendance at these meetings remained inconsistent.

On October 16, 2009, Colonel Mercado sent a memorandum to Colonel Dennis Carpenter, Director of Human Resources, recommending that the Plaintiff be terminated. Colonel Mercado referred to "numerous reports indicating [the Plaintiff's] insubordination and a lack of respect for the school, its rules, and his supervisor, [Colonel] Lane." (Entry 34-19 at 2.) Colonel Mercado mentioned Lt. Colonel Dopf's September inquiry and noted that the Plaintiff had failed to attend daily meetings with Colonel Lane.

On October 20, 2009, Colonel Carpenter sent the Plaintiff a letter acknowledging his receipt of various documents from the Commandant's Department. He also expressed his agreement with Colonel Mercado's final determination. Colonel Carpenter advised the Plaintiff that his termination was for just cause under paragraphs 6.1.1 and 6.1.3 of his employment contract. (Entry 34-4 at 5; Entry 34-20 at 2.) The Plaintiff was suspended without pay as of October 20 and terminated effective October 31, 2009.

Also on October 20, 2009, a meeting was held at the Citadel concerning allegations that Captain Wood had violated the school's sexual harassment policy by making inappropriate statements to a cadet about her attraction to him. An investigatory follow-up meeting was held on October 29, 2009. Wood admitted her misconduct and was issued a letter of reprimand that became a part of her personnel file. (Entry 41-14.) Colonel Carpenter testified that although Wood's supervisor thought she was doing a great job in the Fourth Battalion, because it was a sexual harassment case, both the Commandant and

4



Human Resources agreed that Wood should be transferred out of the battalion. As a result, Wood was transferred to Jenkins Hall, and she remained there for the duration of the semester and was reassigned the following semester.

Following his termination, the Plaintiff requested and was granted a formal termination hearing. The Citadel conducted this hearing October 29 and 30, 2009, with Colonel Joseph Trez presiding. At the conclusion of the hearing, Colonel Trez upheld the Plaintiff's termination. The Plaintiff contends that the Citadel did not set a deadline for submitting appeals, but the Defendants contend that the Plaintiff had ten days to appeal Colonel Trez's decision to the President of the Citadel. Correspondence between Colonel Lane and the Plaintiff indicates that such action was due by the close of business on November 16, 2009. On November 20, 2009, the Plaintiff's father hand-delivered a written statement indicating that the Plaintiff intended to file an appeal. The Citadel found that the Plaintiff had failed to file a timely appeal and had waived his privileges. (Entry 34-23 at 2.)

On or about August 16, 2010, the Plaintiff submitted a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that the Citadel had discriminated against him on the basis of his race and gender and claiming that the Citadel had retaliated against him for engaging in protected conduct. After receiving a right to sue letter, the Plaintiff filed this action.

## STANDARDS OF REVIEW

### I. The Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making the final



5

determination remains with the Court. Mathews v. Weber, 423 US. 261, 269 (1976). The Court reviews de novo those portions of the R&R to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## II.  Summary Judgment

To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327. Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented. Anderson, 477 U.S. at 248.

## DISCUSSION

In the R&R, the Magistrate Judge recommends that the Court grant the Defendants'



motion for summary judgment as to the Plaintiff's federal claims and remand the remaining state claims to the Charleston County Court of Common Pleas. The Magistrate Judge first evaluated the Plaintiff's disparate treatment claims based on (1) his transfer from the Fourth Battalion to the Third Battalion so that an African-American female could work in the Fourth Battalion and (2) his termination for just cause when an African-American female who engaged in misconduct was not terminated. Second, the Magistrate Judge evaluated the Plaintiff's claim that he was terminated in retaliation for his complaints.

As the Magistrate Judge noted, the United States Supreme Court has adopted a three-part formula for analyzing discrimination cases pursuant to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, a plaintiff must establish a prima facie case of discrimination. If the Plaintiff does so, then a rebuttable presumption of discrimination exists. Second, once this presumption exists, the burden shifts to the Defendant to show a legitimate, non-discriminatory reason for its action. Third, if the Defendant shows a legitimate, non-discriminatory reason for its actions, then the burden shifts back to the Plaintiff to come forward with evidence to show that the Defendant's asserted reasons are a mere pretext for true discriminatory motives. 41 U.S. at 802-05.

I.    **The Plaintiff's Disparate Treatment Claims**

To meet the first prong of the McDonnell-Douglas framework, the Plaintiff must establish a prima facie case of disparate treatment by establishing: (1) that he is a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he was subjected to an adverse employment action; and (4) that similarly situated employees who are not members of the protected class were treated more favorably or were retained under apparently similar circumstances. Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.



1995), cert. denied 516 U.S. 870 (1995).

With regard to the Plaintiff's claim based on his transfer from the Fourth Battalion to the Third, the Magistrate Judge determined that the Plaintiff was a member of a protected class and that he was performing his job satisfactorily at the time of the transfer. In addition, the Magistrate Judge determined that, considered in the light most favorable to the Plaintiff, the evidence supports the inference that the Plaintiff was transferred on the basis of his race and gender. Nevertheless, the Magistrate Judge determined that the Plaintiff failed to establish a prima facie case because the transfer did not amount to an adverse employment action.

In his objections, the Plaintiff contends that his transfer did amount to an adverse employment action. The Plaintiff objects: "It is obvious when reviewing the facts in a light most favorable to the Plaintiff [that] the transfer was adverse to the Plaintiff's overall employment and work environment. A change in circumstances is a significant measure of adversity when the change negatively impacts the individual[']s overall employment environment." (Entry 47 at 13.) Unfortunately for the Plaintiff, however, the fact that "the transfer was adverse to the Plaintiff's employment" does not necessarily mean that the transfer constituted an "adverse employment action" under the law. As the Fourth Circuit stated in Holland v. Washington Homes, Inc.:

> To prevail on a Title VII claim, "the existence of some adverse employment action is required." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir.2004). An adverse employment action is a discriminatory act that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." Id. (internal quotation marks omitted). "The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action." Id. at 376. There must be some significant detrimental effect and "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a

new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." Boone v. Goldin, 178 F.3d 253, 256-57 (4th Cir.1999).

487 F.3d 208, 219 (4th Cir. 2007).

Here, the record reflects that the Plaintiff's employment contract did not assign him to a specific battalion. Moreover, when he was transferred from the Fourth Battalion to the Third, he suffered no decrease in compensation, benefits, title, or responsibility. The Plaintiff even admitted this during his deposition:

    Q.    Then when you were "transferred" to Third Battalion from Fourth Battalion, you had the same duties and responsibilities – at the time that you were, as you put it, transferred from Fourth Battalion to Third Battalion, you had the same duties and responsibilities, correct?

    A.    That's correct.

    Q.    There was no interference or decrease in the compensation and benefits that you had as an employee of The Citadel after you were transferred, correct?

    A.    Un-huh.

    Q.    Yes?

    A.    Yes.

    Q.    That's correct, right?

    A.    Right.

    Q.    In other words your compensation, your benefits, your privileges, that arose out of your contract with The Citadel, all stayed the same between the time that you were transferred from Fourth Battalion to Third Battalion, correct?

    A.    That is correct.

(Entry 34-2 at 26-27.)



After a review of the record and the applicable law, the Court agrees with the Magistrate Judge that the Plaintiff has failed to establish a prima facie case of discrimination based on his transfer from the Fourth Battalion to the Third, as the transfer did not constitute an adverse employment action under the law. Accordingly, the Court adopts the R&R in this regard and overrules the Plaintiff's objection.

The Magistrate Judge next considered the Plaintiff's claim that the Citadel discriminated against him on the basis of his race and gender when it terminated him but did not terminate Captain Wood, an African-American female who engaged in misconduct. In contrast to the Plaintiff's previous claim, the Magistrate Judge noted that termination from employment does constitute an adverse employment action. Nevertheless, the Magistrate Judge determined that the Plaintiff's claim failed because the evidence indicated that the Plaintiff and Wood were not similarly situated in all material respects.[2] The Magistrate Judge stated: "[T]he mere fact that Plaintiff was terminated while Wood was not is not in and of itself evidence of unlawful discrimination, as the misconduct they were accused of was not of the same nature, nor did it cover an equivalent time period." (Entry 46 at 13.) The Magistrate Judge noted that Wood was accused by a cadet of having made inappropriate sexual comments; that upon investigation Wood admitted her conduct and apologized; that Wood received a letter of reprimand and was transferred; and that otherwise Wood was considered to be an exemplary employee. In contrast, the Magistrate

---

[2] The Magistrate Judge also noted that a question exists as to whether the Plaintiff was satisfactorily performing his job at the time of his termination. The Magistrate Judge did not make a finding on this issue, however, because he found that the Plaintiff failed to show that other similarly situated employees outside his protected class received more favorable treatment.



10

Judge noted that the Plaintiff's supervisor considered him to be a poor employee; that even though the Plaintiff disputes their veracity, the record contains numerous complaints about the Plaintiff's misconduct; that the Plaintiff was not terminated based on the initial reports of misconduct but instead was counseled and ordered to attend daily meetings; that the Plaintiff admitted his attendance at these meetings was inconsistent; and that it was only after Colonel Lane continued to complain about the Plaintiff's repeated performance problems that he was terminated.

The Plaintiff objects to the Magistrate Judge's determination and asserts that "the Plaintiff would not have been terminated from his employment had the Defendant not adversely transferred the Plaintiff." (Entry 47 at 13.) As this Court has already found that the Plaintiff's transfer did not constitute an adverse employment action, this objection is without merit.

Ultimately, after review, the Court agrees with the Magistrate Judge that the Plaintiff's disparate treatment claim based on his termination fails because the record does not indicate that the Plaintiff and Wood were similarly situated employees. As the Fourth Circuit recently stated in Kelley v. United Parcel Service, Inc., — Fed. App'x —, 2013 WL 2480211 (4th Cir. June 11, 2013):

> In the employee disciplinary context, "'[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir.2008). Indeed, "[t] he most important variables . . . and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed." Moore, 754 F.2d at 1105. We have held that, to establish a comparator, a plaintiff must
>
>> show that [he is] similar in all relevant respects to [his] comparator. Such a showing would include evidence that the



11

> employees dealt with the same supervisor, were subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir.2010) (No. 09–1604) (argued but unpublished) (internal quotation marks and citations omitted).

Here, the Court finds that the Plaintiff and Wood are not valid comparators because they were not similarly situated in all relevant respects. There is no evidence that Wood had any history of prior misconduct or had received previous reprimands, as had the Plaintiff. Of equal importance, Wood's misconduct was of a wholly different nature than the Plaintiff's alleged misconduct. Also, Wood and the Plaintiff did not deal with the same supervisor. Moreover, the Plaintiff was not terminated immediately; rather, he received counseling and was put on probation after Colonel Lane's first complaints. In short, the Court finds that the Plaintiff has failed to identify a similarly situated colleague outside his protected class who was treated differently than he was, and thus, the Court agrees with the Magistrate Judge that the Plaintiff has failed to establish a prima facie case of disparate treatment based on his termination.

## I.    The Plaintiff's Retaliation Claim

In his complaint, the Plaintiff alleges that he engaged in protected activity when he reported discrimination and retaliation; the Plaintiff specifically alleges that he "was retaliated against for reporting the Defendant to the Commandant for having alcohol in his office refrigerator and race discrimination." (Entry 1-1 ¶ 92.)

Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). As the



Magistrate Judge noted, retaliation claims under Title VII are subject to the same proof requirements as disparate treatment claims. To succeed in a typical case, a plaintiff must establish a prima facie case by showing: (1) that he engaged in protected activity; (2) that the employer acted adversely against him; and (3) that there was a causal link between the protected activity and the asserted adverse action. Ziskie v. Mieta, 547 F.3d 220, 229 (4th Cir. 2008); Holland, 487 F.3d at 218.

In the R&R, the Magistrate Judge determined that the Plaintiff failed to establish a prima facie case of discriminatory retaliation. The Plaintiff objects generally to this conclusion, complaining that "[t]he Plaintiff was retaliated against by the Defendant for his complaints." (Entry 47 at 14.) For the following reasons, the Court agrees with the Magistrate Judge's findings and overrules the Plaintiff's objections.

First, with regard to the Plaintiff's assertion that the Defendant retaliated against him because he reported Colonel Lane for keeping alcohol in his office, even assuming this to be true, as this Court does, such activity is not protected by Title VII. "Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" Landino v. Sapp, 2013 WL 1800953 (4th Cir. April 30, 2013) (quoting Balazs v. Liebenthal, 32 F.3d 151, 159 (4th Cir. 1994)).[3] Second, although the Plaintiff did engage in protected activity under Title VII when he complained to Colonel McMillan and CTO Hone that he was being discriminated against when he was transferred to the Third

---

[3] In Balazs, the Fourth Circuit quoted Holder v. City of Raleigh, 867 F.2d 823, 828 (4th Cir. 1989), where the court stated: "W[e] do not believe that Title VII authorizes courts to declare unlawful every arbitrary and unfair employment decision. . . . The list of impermissible considerations within the context of employment practice is both limited and specific: 'race, color, religion, sex or national origin.' We are not free to add our own considerations to the list."



13

Battalion, there is simply no evidence showing a causal connection between this protected activity and any adverse action. As the Magistrate Judge noted, the Plaintiff conceded that he took no further actions after he made this one-time statement to McMillan and Hone. (See Entry 46 at 19-23.) In other words, although the Plaintiff complained to McMillan and Hone on one occasion about being discriminated against, there is no evidence to suggest that either the Plaintiff or McMillan and Hone took this information to Colonel Lane or Colonel Mercado, the individuals who allegedly retaliated against the Plaintiff. Thus, there is no evidence to show either that Lane and Mercado knew about the Plaintiff's complaint or that their alleged retaliatory actions had anything to do with the Plaintiff's complaint.[4]

---

[4] Moreover, although the Plaintiff engaged in protected activity by complaining to McMillan and Hone about being discriminated against, the Plaintiff makes it clear in his deposition that he believed that Lane retaliated against him for reporting to Colonel Mercado that Colonel Lane kept alcohol in his office, which, as set forth above, does not amount to protected activity under Title VII.

> Q. Why do you think [Lane] retaliated against you?
> A. Well, I think, again, when I made the accusation he was, you know, in so many words, an alcoholic, to his boss, and his boss turns around and tells him that, I think that accusation – I mean he was and he did.
> Q. Okay. Now I understand that. So I want to make sure I understand you. In terms of Colonel Lane retaliating against you, it was because of a charge about alcoholism.
> A. Exactly. I am sorry, prior to Colonel Lane, I have never been written, never had any incident as the coordinating officer in charge. No issues whatsoever from Colonel McMillan for the things that I was doing and working on over there. About anybody but – then when I go to work for Colonel Lane.
> Q. He retaliated against you by starting to write you up as being insubordinate.
> A. Yes.
> Q. Which ultimately led to your termination.
> A. Exactly.

(Entry 34-2 at 51-52.)



14

See Landino, 2013 WL 1800953, *3, citing Dowe v. Total Action Against Poverty, 145 F. 3d 653, 657 (4th Cir. 1998) ("To demonstrate a causal connection between the protected activity and the adverse action, a plaintiff must also show that his employer knew that he engaged in protected activity."). Here, the Court agrees with the Magistrate Judge that the absence of any evidence connecting the protected activity–i.e., the Plaintiff's complaint to McMillan and Hone about being discriminated against–to an adverse employment action is fatal to the Plaintiff's retaliation claim. Cecilio v. Allstate Ins. Co., 908 F.Supp. 519, 532 (N.D. Ill. 1995). (stating that a simple showing by the plaintiff that an adverse action occurred after a complaint of discrimination "is not even enough to make out a prima facie case of retaliation, let alone to survive a summary judgment motion").

### III.    The Plaintiff's State Law Claims

After recommending that the Court grant the Defendants' motion for summary judgment as to the Plaintiff's federal claims, the Magistrate Judge recommends that the Court remand the remaining state law claims to the Charleston County Court of Common Pleas for disposition.

The Defendants object to the R&R in this regard and assert that this Court is in the best position to address the merits of the Plaintiff's state law claims and that it would be a waste of judicial resources and inconvenient to remand the state law claims. Nevertheless, the Defendants recognize that this Court has wide discretion to dismiss or remand supplemental state law claims. Ultimately, after weighing the values in judicial economy, convenience, fairness, and comity, the Court agrees with the Magistrate Judge that a remand will allow the more appropriate court to rule on these exclusively state law issues. Also, as the Magistrate Judge pointed out, the parties may seek a fast track for



15

resolution in the state court because the issues have been briefed. See S.C. R. Civ. P. 40(c); see also Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims."). Accordingly, the Defendants' objection is overruled.

## CONCLUSION

Based on the foregoing, it is hereby:

**ORDERED** that the Magistrate Judge's R&R (Entry 46) is adopted and fully incorporated herein; the Plaintiff's objections (Entry 47) are overruled; the Defendants' objections (Entry 48) are overruled; the Defendants' motion for summary judgment (Entry 34) is granted as to the Plaintiff's federal claims of disparate treatment discrimination and retaliation; and the Plaintiff's remaining state law claims are remanded to the Charleston County Court of Common Pleas.

**IT IS SO ORDERED.**

Sol Blatt, Jr.
Senior United States District Judge

September 24, 2013
Charleston, South Carolina

